Good morning, Your Honors. My name is Jack Sholkoff. May it please the Court, I represent the appellant and cross-appellee, Vestagen Protective Technologies. I'd like to reserve five minutes for rebuttal. The trial court, by erroneously refusing to let the jury decide Vestagen's claims, allowed SPI to stifle competition and destroy a significant competitor to its medical apparel business. Vestagen understood that it could create surgical scrubs that would help protect workers from hospital-acquired infections, HAIs, in a way that SPI was not doing. Vestagen's real innovation was not, however, antibacterial scrubs. Instead, it was its idea to work with industrial standard agencies and government safety agencies in order to create a new safety standard, backed by government regulation, for healthcare apparel that lay in between, a category of healthcare apparel that lay in between regular scrubs and hazardous material uniforms. Counsel, exactly what error are you attributing to the district court? There were several errors by the district court. The first one, and perhaps the most egregious one, was the court's early error to failure to grant leave to amend the counterclaim with regard to the unfair business practices and unjust enrichment counterclaims brought by Vestagen. Counsel, wasn't the district court's reasoning that those claims were preempted by Vestagen? That was the court's reasoning, and I think there were two mistakes. The first mistake, or depending on how you sequence it, even if that was the case and the court had found that there was preemption, the court should have permitted Vestagen to amend the counterclaim to plead around that. The court wasn't required to allow you to amend your contract, but there was no finding by the district court of futility. But the district court dismissed those claims because they were preempted, not because you had failed to adequately plead them. That's correct. However, in the Hicks case, this court decided last year that when a district court denies leave to amend, they must provide an explanation of the futility. It's not enough simply to say that while based on the facts that were alleged in the counterclaim, that there would be preemption. Go ahead. I didn't see anything in your briefing explaining how you would formulate a claim that wouldn't be preempted or superseded by the California law. I didn't see you make that suggestion. Do you have a suggestion now about what you would have put in that would have avoided being superseded? I think that what Vestagen could have pleaded is that it could have pleaded that it was using public information. One of the issues that became very... What would be the cause of action for copying public information? Was it confidential or not confidential? It would be anti-competitive behavior under Business and Professions Code 17200. Or for using information that Vestagen had made public. Is there a site for that or any basis for that in California law? Under California law, under 17200, the real focus is anti-competitive behavior. It doesn't matter whether the information itself is confidential. What matters is, is there an allegation or is there evidence that the wrongdoer is using information in an anti-competitive way? The evidence that was attempted to be shown at trial was that the various e-mails and other internal communications by SPI where they said, okay, now we understand what Vestagen is doing with regard to getting industrial standards to approve this classification of medical apparel. Let's stop it. Let's muck it up. Those were the words that they used. The trial court didn't let that in because the trial court was focused on whether it had the Business and Professions Code claim still been there. It wouldn't have mattered whether it was a trade secret because Vestagen could have argued and could have gone to the jury and said, look, this was unfair, anti-competitive behavior. SPI using its strength as a leader in the business to interfere with Vestagen's efforts to try to create this standard. And that would have stated a claim under Business and Professions Code 17200. But because that was out, because there was no opportunity to amend, because there was no finding of futility, that was an error by the district court that requires reversal. Just so that I'm clear, the claim that you would have added was that SPI in attempting to delay a decision by ASTM was acting in a non-competitive way, anti-competitive way, and you could have claimed that under the California Business and Professions Code 17200. Precisely. And is there any case that supports that theory? I do not have one offhand. I can certainly supplement that in a letter after argument. To address that question. But 17200 is very clear in that, and I believe that we have cited the general proposition under 17200 that an unfair business practice is either unlawful, unfair, or fraudulent. And there was an allegation in the counterclaim as to that, but there were, the trial court found insufficient factual allegations in the counterclaim to make that showing. And they should have been given the opportunity to fix that and to amend that. And if they could amend it, then that counterclaim would have stayed. If after amending they were unable to make that showing, then the case, then those claims would have been dismissed. But the federal rules are pretty clear that if you're unable to amend, unable to state a claim in the first instance, that the district court almost always has to give the right to amend unless the district court shows futility. And there was no discussion of futility here at all. There was no discussion of amendment at all. Did you seek leave to file an amended complaint and attach a proposed amended complaint that would outline your changed claims that would, in your view, have answered the issues addressed in the district court's order dismissing your claims? Vestation did not do that. However, in the Council of La Raza v. Segevesk case, that's 800-F3-1032, this court had stated that a request to amend is not necessary, that the district court is supposed to allow the amendment even if it's not requested. Now, going to the actual dismissal of the Business and Profession Code and unjust enrichment claims on the pleadings, we think that that was an error because essentially by dismissing those claims, it led to this catch-22 that Vestation found itself at at trial. On the one hand, the district court held that the trade secret claim barred the B&P claim as well as the unjust enrichment claim. On the other hand, the trial court held at trial, consistently stated at trial, that the matters that Vestation was arguing were trade secrets were not trade secrets. But doesn't California case law state that the unjust enrichment claims can be preempted even if there really isn't a trade secret? The issue is whether the allegations arise from the same nucleus of operative facts. It does do that, and what's interesting is that the cases talk about whether it meets the definition of a trade secret. Now, there can be confidential information that doesn't technically meet the definition of a trade secret, and I think that those cases are referring to that situation. In our case, what the trial court kept referring to... That's, I guess, a third trade secret act definition of trade secret. It seemed very, very broad to me. It basically said any information that's valuable that you've made a reasonable attempt to keep confidential. It seemed to cover everything. So what would be a confidential piece of information that wasn't covered by that definition? Well, I think that it would be. The issue is whether the material was kept confidential. That was the issue at trial in this case, was whether the ASTM information was confidential. The trial court refused to allow evidence of the chicanery that was going on there because the court said, well, whatever Vestagian was doing with ASTM was public, and so therefore is not protected by trade secrets. True, isn't it? That is arguably true. The issue, however, is that you could conceivably have public information that in itself is also a trade secret because you could have all this... And what, in fact, happened here is you have information going to ASTM that is public, but the import of that information down the road, which would be getting that regulatory or that industrial standard approved by a regulatory agency, that strategy was the kind of secret sauce, the trade secret. But everybody knew that that's what Vestagian was doing. You invited SPI to join the ASTM. They joined a committee which had 15 to 20 members. They promulgated proposed standards. They publicly discussed seeking OSHA approval of those standards. I mean, all of the things that Vestagian was doing before that organization were public. There doesn't seem to be any secret sauce, to use your wording. Well, but all of the things that it was doing, kind of the grand scheme was that once all of that was in place, there would be now this regulatory requirement for antibacterial scrubs that hadn't existed. But did anybody in the industry not understand that that's what's happening? Well, I... It seems to be clearly understood by everyone. I think that SPI learned of it late, and that's why they tried to stop the process. And there was evidence that Vestagian tried to enter into the record that talked about SPI admitting internally that, gee, if this happens, we're not prepared. We didn't see this coming. But that may mean that they were a competitor and that they were pursuing strategies that were contrary to your client's strategies, but it doesn't mean that they were using secret information, does it? Well, I think that they certainly learned of, and this kind of goes into the other claims, the contract claim as well as large of the contract claim, that they learned of that information because Vestagian shared it to them as part of that nondisclosure agreement. And Vestagian shared information with them, including a PowerPoint, before the parties entered a nondisclosure agreement. Is that correct? They did, although it's not... The evidence wasn't clear exactly the depth of that PowerPoint. And I think that clearly once the NDA had been in place, and even actually before, there was evidence that Mr. Favre had told Mr. Singer that, you know, everything we're doing here is confidential. But is that sufficient? Is it sufficient for one entity to say, we consider this to be confidential, we're disclosing this to you, and the other entity is then bound by that? Well, I believe that there is authority that if the parties intend things to be confidential. But that's the parties. One party may intend confidentiality. That doesn't mean the other does. And it seemed from the information in the record that SPI was the larger player in the industry, and Vestagian very much wanted to partner with them to market their... leverage their market presence, and so was approaching SPI and providing this information to them. And SPI had not at that point explicitly agreed to anything. Is there something in the record that contradicts what I'm understanding from what I read? I know that there was testimony from Mr. Favre, which is Vestagian, that the initial discussions, and Mr. Singer did not disagree with this, had been that matters would be confidential. But was there a specific agreement before the actual agreement? I don't believe there was specific evidence on that point. And the parties did think that it was necessary to actually enter, or at least exchange written agreements for nondisclosure at some point to memorialize an agreement. So before they did that, well, that seems self-evident. Before they entered that agreement, they hadn't entered the agreement, and they apparently didn't think any sort of oral discussions were sufficient because they then later entered an agreement. Well, I'm not sure there was evidence about what they necessarily thought was sufficient. And even if that was the case, I mean, one of the disputes at trial related to this breach of contract, and we think that, and I know my time's running out, that there was an issue with regard to the court not allowing into evidence both versions of the alleged nondisclosure agreement. Wasn't that because there was an insufficient foundation laid for the one proffered by your client? Well, that's what the court ruled. Well, why was that wrong? What was the foundation that was laid? Mr. Favre testified that he believed that this was the final agreement, which was the same. But a belief that it's final, is that sufficient foundation? That was the same evidence that was deemed to be sufficient foundation for the agreement that Mr. Singer said was the final agreement. Which was agreed without objection, right? Initially, but then there was a subsequent objection after that, that when it became clear that the evidence for both agreements was identical, that you had Mr. Singer saying, yeah, this is the final agreement, and then you had Mr. Favre saying, this is the final agreement, and the judge said exactly that. Well, the first one was admitted without objection, at which point counsel said, well, I'm objecting now. I thought there was evidence that SBI had not agreed to the terms of the first draft agreement and said they had comments and objections, but there was no such concerns about the final one that was ultimately admitted into evidence. Am I wrong about that? My understanding of the record is that there was a disputed issue of fact as to which agreement was entered into evidence, was the final agreement. Specifically, Mr. Singer said that the one with the sunset clause was the final agreement. Mr. Favre said there were several agreements going back and forth, but that the one that did not have the sunset agreement was, under his understanding, was the final agreement. But the evidence wasn't just one person's word against the other. I thought the record included writings, e-mails, in which SBI responded to what was called the revised NDA and said they disagreed with particular terms and sent what became the final NDA. So there was more than just Mr. Singer's testimony and more than Mr. Favre's testimony. But now we're weighing the evidence, and I think that that was a decision that the jury should have been allowed to make. The court has to determine if there's a genuine issue of material fact, and that's within the district court's purview. And based on the information that's in the record, why was it an error for the district court to find that the only reasonable conclusion was that the final agreement was the operative agreement? Well, I think it was an error because the court didn't allow the second agreement into evidence. So it wasn't an issue of the court deciding, well, there's no disputed issue of fact here. It was we're not even going to allow in that evidence, and so we're not going to allow the jury to decide that, well, based upon the evidence from Mr. Singer, the evidence from Mr. Favre, and the e-mail information, that the jury could have decided, look, the contract was the one with the sunset clause, or the jury could have decided alternatively that it wasn't. The jury should have been able to make that decision. Did the district court just conclude that no reasonable jury could reach that conclusion and then decide the issue, similar to how they would have entered judgment as a matter of law? Well, that's not what the judge did, though. The judge simply excluded the evidence, and I think that that was an abuse of discretion. Counsel, did you want to save the balance of your time for rebuttal? Yes, I guess so. Thank you. Good morning, Your Honors. May it please the Court. My name is Mona Hanna. I'm appearing on behalf of Appellee and Cross-Appellant SPI. Let me first begin with respect to the arguments made regarding the pleading stage in 17-200. California law is clear that a 17-200 claim must be based upon a wrongful act, a wrongful act defined by statute, public policy, ordinance, or regulation. It is not simply somebody who didn't act well in the marketplace. And counsel has failed and appellant has failed to provide the district court level with an alternative factual pattern that would support a claim for 17-200. And again, in this appeal, they failed to provide the court with any basis for a factual pattern to base 17-200 on that would be different from what was preempted by CUTSA. So opposing counsel says it was a wrongful act to interfere with their strategy with ASTM by delaying the proceedings. Unless counsel can point to some statute, ordinance, something that we violated. This is a competitor. And in fact, the ASTM standards were not voted on because there was a request for further information that was agreed to by the committee. It wasn't one person acting. And so the fact that a committee decided to ask for further information for voting on ASTM standards that would allow only one product in the marketplace to be in compliance is certainly a fair inquiry. And so unless there is a wrongful conduct attached to that, which Vestigen has failed to cite a single basis to allege that that's wrongful conduct other than the claims that went to trial based on use of confidential information, based on a breach of contract, based on some protected activity, or some violation based on a duty, there can be no 17-200 claim. And so the court was correct to find that the unjust enrichment and the 17-200 claim were preempted by the Cutza Act. And again, counsel has not given any alternative factual pattern that would support a claim that's not preempted. And so it was appropriate for the court to dismiss without leave to amend at that time. And again, there are several cases, and we cite to the Sivaka case, that says that the court need not determine that a trade secret exists to rule on preemption. And there are multiple cases that follow that decision. But did the district court err by not giving Vestigen an opportunity to file an amended complaint to try to state those claims? Not if an attempt would have been futile. And unless there was something that they could have offered the court to say, look, there is a separate, and let me stop and add this, we don't have to guess as to whether or not there was a separate factual pattern that would have supported it. We've gone to trial. Every fact that could have been explored has been explored, and we still see no additional acts that would have supported a separate non-preemptive claim under 17-200 or unjust enrichment. Counsel, do you agree with opposing counsel that the district court allowed in the second agreement on the same evidence that it disallowed the first agreement? Do you agree with counsel's position? I do not agree with that. The evidence at trial took the witnesses through a timeline of the drafting of the agreement, the revisions of the agreement, a red line of the agreement, and then a final agreement attached to an email. And all of those documents were admitted into evidence by testimony. We then admitted Exhibit 577 without objection from the other side. There was never an objection when it was admitted and then published to the jury. I'd like to focus on the testimony of the witnesses who were to lay the foundation for the admission. Is it true that both of them testified that they believed that this was the final document? Thank you for the clarification. I misunderstood the question. No, that is not correct. Mr. Singer, who authenticated the Exhibit 577, testified that that was the final agreement to which they executed. And that was the testimony, and that was how that document was admitted. After identifying all of the correspondence and all of the iterations of the agreement? Exactly. Exactly. And, again, without objection. There was never a question of fact as to which agreement was admitted. And then I'll also point, and so really this does not come down to a question of fact. This comes down to an evidentiary ruling by the court as to whether or not sufficient evidence was presented that the document was authenticated and is what it was intended to be. And that is in the sole purview of the district court, and it ruled on that appropriately. But having said that, the only distinction that Vestigin's counsel has argued is the sunset clause, whether it expires after two years or not, and have not cited the court to any prejudice from the fact that that document was not admitted into evidence. There is no argument here that the sunset provision in the document that was entered would have made any difference. So had both the agreements been entered, what difference would it have made to the outcome in this case? The issue here was that confidential information that, I'm sorry, that Vestigin's allegations of confidential information were, in fact, not confidential. They were disclosed to manufacturers in detail. It wasn't just to SPI that this plan was being disclosed. It was to other manufacturers that Vestigin wanted to partner with, and it was a detailed PowerPoint presentation of here is our master plan. So the issue there is the so-called confidential information was being provided before the NDA was entered into. The sunset provision doesn't come into play, so there is no showing of prejudice arising out of that ruling. I believe those were the two points that counsel addressed. Unless there is questions with respect to that appeal, I would like to turn to the cross-appeal. We believe that strategic partners provided really almost uncontradicted evidence with respect to its Lanham claim. And we believe that that evidence should have entitled it to a judgment as a matter of law. Specifically, this was undisputed, that the advertisement of Vestigin's scrubs as being, and I believe counsel started his argument by saying, protected health care workers from hospital-acquired infections, was a false claim. Not only is it a false claim, it was citing as a basis for that advertisement to a Berman study. And the evidence, undisputed at trial, reflected that the Berman study did not test the fabric that Vestigin was then using and advertising as the product tested in the Berman study. As a result, that advertisement was literally false. And no jury could have found that it was not a false statement. It was literally false. So, we believe, and that's the Southland side. What sort of evidence, because literal falsity, even if we agreed with you is not enough for a Lanham Act, there would also have to be evidence of materiality and other elements. What evidence was there supporting that statement was material? Thank you. Well, we presented evidence of the former Vice President, Mr. Mark Leeson. This is at 3 S.E.R. 303 and 306, who testified that no study supporting claims that Vestig's products protect health care workers. He testified in court that there was no such study. But wasn't there also testimony from a user of the materials that that was just one in a barrage of precautionary measures that were taken in the hospital? So, how can it be material if it was just one of the measures that was taken in the hospital? Well, thank you. Yes, I believe the court is referring to the Baptist Hospital. The issue of materiality doesn't go to what other safety measures are going into it. It goes to whether or not it would influence someone to. Exactly. That's exactly right. And the reason that Baptist changed from SPI scrubs to Vestigen scrubs is because it believed that it would assist in protecting its health care workers. But that is true. Go ahead. I thought the testimony from the Baptist Health Care was that they switched to Vestigen before Vestigen switched to Signature Stretch. So, at the point when they made their purchasing decision, Vestigen was still using the MyGuardian fabric back in 2012-2013. Your Honor, that is not my recollection of the evidence, and I apologize if I'm mistaken on that. The testimony that we received was that they were purchasing and continued to purchase. Because my memory may be faulty, let me assume that that is the case, that they originally purchased the fabric that was studied by the Berman study, but then continued to use the new fabric completely unaware that it was never tested by the Berman study. But we're talking about the materiality of the advertising and the reliance on it. And at least based on my notes and review of the evidence, they made that switch before Vestigen switched fabrics. So they weren't relying on the advertising at the point they switched. Well, let me submit the following, that if Vestigen had altered its advertisement to say, we've now switched the fabric and this fabric hasn't been tested, but we think it's just as good as the one that was tested, would Baptist Hospital have continued to purchase those scrubs? I believe the advertisement has a continuing impact on consumers. And what Vestigen, in fact, did was it did a bait and switch. It initially had a fabric that was tested, changed that fabric, didn't test it, and continued to advertise that it provided the same benefits. In fact, at trial, I think somebody tried to argue it could have been even better, but we don't know because they didn't test it. And to say that fabric was tested is false. In addition, that's not the only false advertisement. They also advertised that their material had been registered under the FDA as a medical device. And the testimony from their own witnesses were that that was not the case. That is not true. You cannot register fabric as a medical device. Again, even if we agree that was literally false, it's hard to understand how that material, since nobody was buying a roll of fabric, they were buying garments. I'm sorry, maybe I'm not articulating this properly. You can register scrubs as a medical device. But you can't, I'm sorry, surgical scrubs. But hospital scrubs cannot be registered as a medical device. What Vestigid was advertising is that all of our scrubs, our entire line, hospital scrubs, scrubs that you wear, you know, outside of the surgical room, are all medical devices, and that's false. And they admitted that that was false. Vestix, they were arguing, I'm sorry, they were advertising that Vestix, which is the name of the material that they used, was a medical device. That's false. Secondly, they admitted that they were making health claims in their advertisements about their medical scrubs that you could only make if you had FDA Class 2 certification. And they did not. They only had FDA Class 1 certification. And evidence was presented where they internally had a checklist of what claims we can make and what we can't make and admitted that they were making claims that they could not make without a Class 2 certification and did not have a Class 2 certification. It's false. And these kind of hospital, I'm sorry, these kind of health claims being aimed at health care workers who are being exposed to very significant pathogens absolutely have an impact on purchasing abilities. And we presented a survey expert to put into evidence that very fact, that it has a material impact on consumers and their decision to purchase scrubs. We believe that the clear weight of the evidence entitled SPI to a judgment is a matter of law, but at the very least, if not, then a new trial should have been ordered. We believe that there were some improper tactics by Vestigen's counsel during trial that may have resulted in confusion to the jury. Their claims at their opening statements about the fact that they were going to establish that SPI was a thief and betrayal and stealing, et cetera, when the court dismissed those claims, it also instructed counsel not to mention them during closing arguments. And so we were then precluded during closing arguments from explaining why those claims were untrue, were unproven, et cetera, and had to direct our attentions only to the affirmative claims. That may have been confusing to the jury. In addition, counsel spent an inordinate amount of time questioning or attempting to question witnesses regarding ASTM, and the court had made it very clear that it found that line of questioning irrelevant and would continue to sustain objections. And as a result, multiple objections over a one-hour period of time had to be asserted, despite the fact that counsel was clearly given direction as to line of questioning. Again, that could have been confusing to the jury. And so we believe that based on the potential confusion, one other point that I'll quickly point out, there was a motion in limine in which counsel was directed not to cross-examine witnesses regarding third-party ads over which SPI had no control over. And again, counsel violated that motion in limine, requiring trial counsel to, again, object and request that the court reassert the ruling on the motions in limine. All of these types of tactics during a very truncated, information-heavy trial, this was a fairly complicated series of facts that we had to introduce to a jury over a seven-hour trial taking four days. These kinds of tactics confused the jury, and I think we should have been allowed to at least go forward on a new trial on that evidence. Would you agree with Vestigin's counsel that the district court abused its discretion by limiting the trial time to seven hours for each party? No. It was certainly an aggressive schedule, but we were able to get in the evidence that we needed to get in, and Vestigin's counsel, when it argues that it wasn't able to do so, is ignoring the one hour of time that it spent asking a line of questioning that the court had clearly indicated was irrelevant. The court was very clear in terms of our timeline. It initially gave us five hours. It then gave us two additional hours for seven hours. What's your estimate as to the amount of time that the trial would take? I think I estimated ten hours. I think that was my initial estimate was ten hours. How many weeks originally that the parties had indicated the trial would take? I can't remember at this point. It's a little different to me when you have to defend a case and then put on your own case. I was really taken aback by the time limitations and how strictly they were enforced. Having been a district court judge, I just found that to be really difficult for the parties. I think that it did pose a challenge, but it required the attorneys to allocate their time to what they felt was most important. Should they be required to do that? Should the attorneys be required to streamline their cases and not present their entire case in order to comply with time limits that have been imposed by the court? I think that if Vestigin was able to make a showing that it used its time efficiently and was moving the case along, that that may have been a consideration for the district judge to consider in the request for additional time. I think in this case, however, there was evidence, and I would defer certainly to the district judge on this, that there was evidence that Vestigin did not use its time wisely. In fact, that was raised in the last day of trial when counsel suggested that they needed more time to put on the witnesses and the judge said, you did have plenty of time. Counsel for Vestigin just chose to use it in a different manner. Thank you very much for your time. Thank you. Just a couple of issues. With regard to the last issue on the trial time, this court last year in the Skidmore case, which is presently under en banc review for the underlying issues, there was language in that case where the court pointed out the district court has discretion with regard to time limits, but they must not be inflexible and shouldn't be arbitrary. And that's what clearly seems to have happened here. And as a result, Vestigin couldn't put on part of its evidence with regard to its false advertising claim. And more importantly, the sequencing of the case allowed SPI to dictate, to basically run out the clock by putting on ten witnesses for its case, which Vestigin then had to cross-examine, put on its defense before it even got to its affirmative case. And then lastly... Counsel, the district court found that Vestigin used two hours questioning witnesses about its activities at the STM and that the court had already ruled that that was irrelevant and so found that Vestigin had not used its time wisely. How do you respond to that? Well, Vestigin was, again, forced into this difficult situation where it had lost its business and professions code claim, was forced to continue to put everything into that trade secrets claim. The essence of its case was the wrongful conduct by SPI, and so it sought to put that information into the case as part of its trade secrets case and did the best that it could under very difficult circumstances. And I just wanted to point the court to portions of the record at pages 666 through 668 and page 674 as well as 883, 888, 893, and 903, all of which go to the wrongful conduct that would have formed the basis of the business and professions code claim. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case that's argued is submitted for decision by the court. That completes our calendar for the morning. We are on recess until 9.30 a.m. tomorrow morning. All rise.
judges: Rawlinson, Ikuta, Bade